PEOPLE v BROOKS

Docket No. 100016. Argued December 11, 1996 (Calendar No. 12).
    Decided December 27, 1996.
      Bernard E. Brooks, III, was convicted by a jury in the Washtenaw Cir-
        cuit Court, Thomas Roumell, J., of first-degree felony murder. The
        Court of Appeals, D. E. HOLBROOK, JR., P.J., and NEFF and J. F.
        KOWALSKI, JJ., affirmed in an unpublished opinion per curiam,
        rejecting the defendant's claim that the circuit court erred in
        excluding evidence that the decedent had cocaine in her blood-
        stream at the time of her death, and holding that the evidence did
        not make it more or less probable that someone other than the
        defendant had shot her (Docket No. 145333). The defendant
        appeals.
          In a unanimous opinion per curiam, the Supreme Court *held*:
          The circuit court erred in excluding autopsy evidence that there
        was cocaine in the decedent's bloodstream.
          The relationship of the elements of the charge, the theories of
        admissibility, and the defenses asserted govern what is relevant
        and material. On the facts of this case, the disputed evidence was
        relevant and material, and should have been admitted. The error in
        excluding the evidence was not harmless, requiring reversal and
        remand to the circuit court for a new trial.
          Reversed and remanded.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *Lenore M. Ferber*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Lyle N. Marshall*) for the defendant.

Amicus Curiae:

*William Forsyth*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief,

Research, Training and Appeals, for the Prosecuting
Attorneys Association of Michigan.

PER CURIAM. At the conclusion of a jury trial, the
defendant was found guilty of first-degree felony mur-
der, and was sentenced to a term of life in prison.
The Court of Appeals affirmed. Among the rejected
claims of error was the defendant's assertion that the
circuit court erred by excluding evidence that there
was cocaine in the decedent's bloodstream at the
time of her death. We agree with the defendant that
this was error and that it was not harmless. We there-
fore reverse the judgments of the Court of Appeals
and the circuit court, and remand this case to the cir-
cuit court for a new trial.

I

This case concerns the murder of Kristine Kurtz, a
resident of Webster Township in Washtenaw County.
Ms. Kurtz lived alone on a farm, where she kept a
great number of horses, geese, goats, cats, and other
animals. Because Ms. Kurtz' economic situation
became relevant at trial, we observe that she was not
employed, but was supported by a large trust fund.[1]

Ms. Kurtz was last seen on November 24, 1990.
Persons visiting her house in the days that followed
were certain that something was wrong. There was
no sign of her, her beloved animals[2] were unfed, and

---

[1] One estimate placed the value of Ms. Kurtz' assets at almost a million
dollars.

[2] One witness testified that the decedent's animals were "her whole
world."

various items of personalty were missing. A search by the police proved unsuccessful, however.[3]

About a month later, on December 26, 1990, Ms. Kurtz' body was found in her barn, under some bales of hay.

As he later admitted to the police, defendant Bernard E. Brooks had been committing a series of break-ins in this area, throughout the time of these events. He admitted almost twenty such crimes, and the jury heard testimony about several of these offenses.

Suspicion soon focused on the defendant. After avoiding apprehension for several weeks, he was eventually located in Mississippi, in the vicinity of his parents' home. He was arrested on December 30, 1990.

At the time of his arrest, the defendant had Ms. Kurtz' truck. He also had a pawn slip for one of the items that had been taken from her home.

The prosecutor introduced evidence indicating that Ms. Kurtz had been shot with the same kind of gun as had been taken in one of the defendant's other admitted break-ins. The fatal bullet was a .38 caliber Special Winchester Western Lubaloy, and the defendant had stolen that type of bullet during yet another of the break-ins.[4]

The defendant testified, admitting that he had broken into Ms. Kurtz' home and had stolen her truck and some other property. However, he said that he

---

[3] In his opening statement to the jury, the assistant prosecutor mentioned that a tracking dog was used by the police.

[4] This type of bullet had not been manufactured since 1975.

had not encountered Ms. Kurtz while he was there, and he thus denied the murder.

When arrested in Mississippi, the defendant had approximately half a pound of cocaine with him.[5] The defendant said that he stole the cocaine from Ms. Kurtz' home, where he also saw other drug paraphernalia. This testimony raised the possibility that the defendant had indeed committed a break-in while Ms. Kurtz was not home. Under the defense theory, Ms. Kurtz was killed by an unknown person who knew that the drugs were in the home.[6] As defense counsel stated:

> Having it known that one keeps large quantities of drugs or cash in an isolated house with no locks on the door is not conducive to a long life.

During trial, the assistant prosecutor introduced evidence of Ms. Kurtz' wealth, to demonstrate that she had no economic need to sell drugs. Her sister also was asked whether Ms. Kurtz would have needed to sell cocaine to make a living, and the answer was "no."

In his rebuttal argument, after defense counsel had proposed that the killing may have been drug-related, the assistant prosecutor argued that the cocaine could have come from anywhere:

---

[5] At trial, there was testimony that the cocaine was worth about $8,000.

[6] On appeal, counsel suggests that the killer may have been unhappy about Ms. Kurtz' failure to safeguard the half-pound of cocaine. Regarding the timing and location of the murder, it may be significant that her body was eventually found under some hay in her own barn, although a presumably thorough search of the premises shortly after the break-in failed to locate her body (even with the apparent aid of a police dog).

> Now, Mr. Brooks has her pickup truck and it has some of her possessions in it. But it also has possessions from a lot of other people. And who's to say that just because Mr. Brooks left Michigan, that he didn't continue doing the B and E's. Could of [sic] got that pound of cocaine from any number of the multitude of B and E's he's told you he's done.

The assistant prosecutor was correct that the evidence submitted to the jury suggested that the defendant could have acquired the half pound of cocaine at any time during his weeks of traveling through several states. He was an admitted thief, and the jury heard nothing to corroborate his claim that Ms. Kurtz possessed drugs, or his claim that he stole the cocaine from her.

The jury convicted the defendant of first-degree felony murder. MCL 750.316; MSA 28.548. The circuit court denied a motion for new trial, and imposed a mandatory sentence of life in prison.

The Court of Appeals affirmed,[7] and we granted leave to appeal. 451 Mich 916 (1996).

II

This case concerns the circuit court's decision to exclude evidence that the autopsy revealed that Ms. Kurtz had cocaine in her bloodstream at the time of her death. The significance of this piece of evidence is that it would have provided corroboration for the defendant's testimony that there was cocaine in the home of Ms. Kurtz.

At a pretrial hearing on the prosecutor's motion to exclude the autopsy results, the circuit court said that

---

[7] Unpublished opinion per curiam of the Court of Appeals, issued March 14, 1994 (Docket No. 145333), reh den unpublished order of the Court of Appeals, entered May 11, 1994 (Docket No. 145333).

this evidence would have no relevance, other than "character assassination":

> From that then, I'm persuaded that would allow in a murder case any kind of character assassination of the victim on anything in their background they had ever had that might cause anybody to, under any possible stretch of imagination, and I use imagination in a broad sense, to think of any reason anybody might want to kill them; they had had an illegitimate child or they had had a bad traffic accident and an argument with somebody. Why I think it's—it's not only a red herring, but a red herring that's stillborn.
>
> I can't—I'm not persuaded it has any relevance at all, and it would appear that its main purpose would be character assassination. That maybe because she had little cocaine in her bloodstream after she ought to be killed. I think that could cause great mischaracter [sic] of justice for the jury. So I'm not—I don't think, unless of course something comes up in the trial which might—might make it relevant on the true issues in the case and not susceptible to such misuse as I understand might be used—it might be used for, I think we ought to keep it out.

Defense counsel made one attempt during trial to get back to this topic, asking an acquaintance of Ms. Kurtz whether she used drugs or whether he had ever seen any signs that she did. The assistant prosecutor objected on the ground that such evidence was "immaterial and irrelevant." The objection was sustained. Later, the defendant offered his testimony about taking cocaine from the house, and about the paraphernalia he found there.

In its opinion of affirmance, the Court of Appeals agreed with the circuit court that evidence concerning cocaine in Ms. Kurtz' blood was not relevant:

> The decision whether to admit evidence is within the sound discretion of the trial court and that decision will not

be disturbed on appeal absent an abuse of discretion. *People v Watkins*, 176 Mich App 428, 430; 440 NW2d 36 (1989). Relevant evidence is admissible while irrelevant evidence is not. MRE 402. Even relevant evidence may be excluded where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. MRE 403. Relevant evidence is evidence that tends to make the existence of any fact at issue more probable or less probable than it would be without the evidence. MRE 401.

We agree with the trial court that the evidence was not relevant. The fact that Kurtz had cocaine in her blood does not make it more probable or less probable that someone other than defendant shot Kurtz. The trial court did not abuse its discretion in refusing to allow the evidence.

III

The Court of Appeals affirmed the exclusion of the disputed evidence on the ground that "[t]he fact that Kurtz had cocaine in her blood does not make it more probable or less probable that someone other than defendant shot Kurtz." The issue, however, is not that simple.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Such evidence is generally admissible. MRE 402.

In *People v Mills*, 450 Mich 61, 67-68; 537 NW2d 909 (1995), we explained that there are two separate questions this Court must answer to determine whether evidence is relevant:

First, we must determine the "materiality" of the evidence. In other words, we must determine whether the evi-

dence was of consequence to the determination of the action. Second, we must determine the "probative force" of the evidence, or rather, whether the evidence makes a fact of consequence more or less probable than it would be without the evidence. 1 McCormick, Evidence (4th ed), § 185, p 773.

Materiality, under Rule 401, is the requirement that the proffered evidence be related to "any fact that is of consequence" to the action. "In other words, is the fact to be proven truly in issue?" Wade & Strom, Michigan Courtroom Evidence (rev ed), Rule 401, p 71. A fact that is "of consequence" to the action is a material fact. *People v McKinney*, 410 Mich 413, 418-419; 301 NW2d 824 (1981). "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." McCormick, *supra*, § 185, p 773.

However, materiality does not mean that the evidence must be directed at an element of a crime or an applicable defense. 1 Weinstein & Berger, Evidence, ¶¶ 401[01] to 401[03], pp 401-7 to 401-26. (See also comments to FRE 401, which is identical to MRE 401.) As stated by the United States Court of Appeals for the Sixth Circuit, in *United States v Dunn*, 805 F2d 1275 (CA 6, 1986), a material fact "need not be an element of a crime or cause of action or defense but it must, at least, be 'in issue' in the sense that it is within the range of litigated matters in controversy." *Id.* at 1281. See also Weinstein & Berger, *supra*, ¶ 401[03], p 401-20.

In addition to determining the materiality of the evidence, we must also consider the principle of probative force. Probative force is the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, "any" tendency is sufficient probative force. MRE 401. This definition is well established in Michigan jurisprudence. See *Beaubien v Cicotte*, 12 Mich 459, 484 (1864), and *Collins v Beecher*, 45 Mich 436, 438; 8 NW 97 (1881).

The principles found in the early cases of *Beaubien* and *Collins* are amplified in the McCormick treatise, where the reader encounters the familiar formulation that "a brick is not a wall."

> Under our system, molded by the tradition of jury trial and predominantly oral proof, a party offers his evidence not *en masse*, but item by item. An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. It need not ever make that proposition appear more probable than not. Whether the entire body of one party's evidence is sufficient to go to the jury is one question. Whether a particular item of evidence is relevant to his case is quite another. It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common objection that the inference for which the fact is offered "does not necessarily follow" is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence ever could meet. A brick is not a wall. [1 McCormick, Evidence (4th ed), § 185, p 776.]

## IV

As noted above, the Court of Appeals said in the present case that "[t]he fact that Kurtz had cocaine in her blood does not make it more probable or less probable that someone other than defendant shot Kurtz." However, the fact that Ms. Kurtz had cocaine in her blood *does* make it more probable that the defendant was telling the truth when he testified that Ms. Kurtz had a substantial amount of cocaine in her home.

The fact that Ms. Kurtz had cocaine in her bloodstream does not prove that she was killed by a drug

dealer, nor does it prove anything else. However, it is a piece of evidence that was relevant to the defense that the defendant sought to present. He argued to the jury that he was a small-time burglar, living outdoors, stealing food and small items that could be converted to cash, taking care to avoid breaking into homes when the occupants were present. It is not our task to determine whether there was any truth to the defendant's story. It is only our task to determine whether he was able to present relevant evidence to the jury.

As we stated in *People v VanderVliet*, 444 Mich 52, 75; 508 NW2d 114 (1993), "[t]he relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." On the facts of this case, the disputed evidence was relevant and material, and should have been admitted.[8]

Plainly, this error was not harmless. The prosecution introduced evidence that Ms. Kurtz did not sell drugs, and the prosecutor's rebuttal argument implied to the jury that no corroborative evidence existed to support the defendant's claim that a substantial amount of drugs was present in the home of Ms. Kurtz. The improper exclusion of evidence supporting that important element of the defense theory is error that warrants reversal.

Because the circuit court erred in excluding autopsy evidence that there was cocaine in the bloodstream of the decedent, and because this error was not harmless, we reverse the judgments of the Court

---

[8] For the same reasons, it is apparent that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403.

of Appeals and the circuit court, and remand this case to the circuit court for a new trial.[9]

BRICKLEY, C.J., and LEVIN, CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

---

[9] We have examined the defendant's other claims of error, and are not persuaded that relief should be granted with regard to any of them.