# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES ROOSEVELT HARRIS,

Defendant-Appellant.

UNPUBLISHED
October 13, 2015

No. 322272
Wayne Circuit Court
LC No. 14-000871-FH

Before: BORRELLO, P.J., and JANSEN and OWENS, JJ.

PER CURIAM.

Defendant was convicted in a jury trial of assault with intent to do great bodily harm less than murder, MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to five years' probation for the assault with intent to do great bodily harm conviction and two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

Defendant first argues that the prosecution failed to present sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant intended to do great bodily harm to the victim, Charlton Rosemond. Defendant contends that this Court should reduce defendant's conviction to felonious assault and remand for resentencing. We disagree.

This Court reviews claims of insufficient evidence de novo. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). The evidence must be viewed in a light most favorable to the prosecution to determine "whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt." *Id*. at 377-378. This Court should not interfere with the jury's determinations regarding the weight of the evidence or credibility of witnesses. *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

The elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014), quoting *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). This Court has defined the specific intent to do great bodily harm as "an intent to do serious injury of an aggravated nature." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230

-1-

(2005), quoting *People v Mitchell*, 149 Mich App 36, 39; 385 NW2d 717 (1986). Intent may be inferred from defendant's actions and use of a dangerous weapon. *Stevens*, 306 Mich App at 629. Further, "injuries suffered by the victim may also be indicative of a defendant's intent." *Id*.

The record contains sufficient evidence for a reasonable jury to convict defendant of assault with intent to do great bodily harm less than murder. Rosemond testified that on the night of January 4, 2014, he was installing a fuel pump in a car in Jerry Fields's driveway. During the job, Rosemond left to buy supplies at the auto parts store. When he returned to Fields's house, he saw defendant, Fields's cousin, pull into his own driveway two houses down. Rosemond recognized defendant because he had fixed cars for him in the past, and Rosemond owed defendant money from one of the previous jobs. Defendant had given Rosemond money to buy a part he needed to fix defendant's car, but in the meantime, defendant took his car to the shop. Rosemond could not get a refund from the junkyard, but said he agreed to pay defendant his money back. Rosemond said that on the night he saw defendant pull into the driveway, he owed him approximately $145 because he had already paid him $25.

Rosemond testified that he started walking towards defendant, identified himself, and said, "As soon as I finish working man, I'm going to give you the rest of the money." Rosemond had a plastic bag in his hand. Defendant was standing at the back driver's side door of his car with his back to Rosemond. According to Rosemond, defendant turned around and started walking towards him. Defendant pointed a gun at Rosemond's face and threatened to blow his head off if he did not give defendant the money he owed. Rosemond said he tried to tell defendant he would have the money soon, but defendant lowered the gun to his side, tilted his wrist, and fired.

Rosemond testified that defendant's son then tackled Rosemond from behind and punched him in the face and head. He said that when defendant and his son got into the car to leave, defendant said, "The next time I see you, you ain't got my money, I'm going to kill you."

When Rosemond tried to take a step, he realized defendant had shot him in the foot. He tried to gather his tools so nothing would happen to them. Rosemond said that Fields then came out of his house and he told Fields that defendant shot him. Fields let Rosemond into his house and called 911.

In contrast to Rosemond's account of the shooting, defendant testified that a man approached him at night in his driveway while he was getting his two young children out of the car. He had just returned from his barbershop, and had a significant amount of money with him. When defendant turned around, the wind was blowing and his hood was in his face. He could see boots and a snowsuit, and saw that the man was holding a clear plastic bag. The object in the bag appeared to defendant to be a gun. Defendant testified that he then grabbed his gun from his computer bag and fired one shot. He did not realize the man was Rosemond, and did not threaten to blow his head off. Defendant also said that he did not realize the shot even hit the man because he saw the man run off into a vacant field.

Defendant's intent to do great bodily harm may be inferred from Rosemond's testimony that defendant threatened to blow his head off and kill him, and from defendant's use of a dangerous weapon. Defendant did not dispute that he fired his gun, and the prosecution

introduced into evidence the 9 mm shell casing recovered from the ground, and the 9 mm Hi-Point gun found in defendant's computer bag at the time of his arrest. Further, Rosemond suffered serious injury from the shooting. Rosemond had three surgeries on his foot and needed two more, his heel was shattered, and doctors had him wear a "halo" with bars and rods going through his heel and ankle. The prosecution introduced Rosemond's medical records into evidence. While defendant's testimony that he acted in response to what he perceived to be a threat is contrary to Rosemond's testimony, this Court should not interfere with the jury's determination of witness credibility. Therefore, the evidence, when viewed in a light most favorable to the prosecution, was sufficient for a reasonable jury to find that defendant intended to do great bodily harm when he fired his gun.

Defendant next argues on appeal that the trial court plainly erred when it admitted testimony that defendant did not have a concealed pistol license (CPL), and that this Court should reverse and remand for a new trial. We disagree.

To preserve a claim of evidentiary error, "a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1) and *People v Grant*, 445 Mich 535, 545, 553; 520 NW2d 123 (1994). Defense counsel failed to properly object to the testimony regarding whether defendant had a CPL; therefore, the issue is not preserved.

Unpreserved evidentiary claims are reviewed for plain error affecting substantial rights. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014); MRE 103(d). A plain error affects substantial rights when "the error affected the outcome of the lower-court proceedings." *People v Jones*, 468 Mich 345, 356; 662 NW2d 376 (2003). Reversal is not warranted unless "the plain, unpreserved error resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id*. at 355.

Officer George Alam testified at trial that during defendant's arrest on January 8, 2014, he recovered a 9 mm Hi-Point gun from defendant's computer bag. The prosecutor then asked Officer Alam if defendant provided him with a CPL. When Officer Alam said no, the prosecutor continued to ask general questions about CPLs. On the third such question, the court interrupted and, following a sidebar discussion with the attorneys, instructed the jury to disregard the last question and answer. If defense counsel objected to the questioning, he did not do so on the record.

During defendant's testimony, he was asked by the jury if his gun was registered. Defendant said his gun was registered with the Detroit Police. The court then followed up by asking if he had a CPL, and defendant said no. On recross-examination, the prosecutor also asked defendant if he had a CPL. After he said no, she asked if he had permission to carry the gun concealed outside of his home. Defendant said he could not fully answer the question, and defense counsel objected on the basis that the question called for a legal conclusion. The court overruled the objection, and asked defendant to answer the question with a yes or no. Defendant said no.

Testimony that defendant did not have a CPL for the gun he used to shoot Rosemond was not relevant to whether he committed assault with intent to do great bodily harm and felony-firearm, or to his self-defense claim. The court's admission of such evidence, however, did not amount to plain error affecting defendant's substantial rights. The error did not affect the outcome of the trial. Further, the error did not result in the conviction of an actually innocent defendant, or seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003), quoting MRE 401. "[A] material fact need not be an element of a crime or cause of action or defense but it must, at least, be in issue in the sense that it is within the range of litigated matters in controversy." *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013), quoting *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996) (citations and quotation marks omitted). Generally, relevant evidence is admissible at trial while irrelevant evidence is not. MRE 402; *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011). Evidence that is relevant may still be excluded if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403; see also *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010).

Evidence that defendant did not have a CPL was not relevant to whether he committed assault with intent to do great bodily harm or felony-firearm.[1] Both Rosemond and defendant testified that defendant possessed and fired a gun on the night of the incident, and evidence that defendant did not have a CPL for the gun does not make it more or less probable that he intended to do great bodily harm to Rosemond. Felony-firearm requires "that the defendant possessed a firearm during the commission of, or attempt to commit, a felony." *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Again, defendant did not dispute the fact that he possessed a gun on the night of the shooting. Also, although carrying a concealed weapon without a license is a felony under MCL 750.227(2), it is not a felony that may serve as a predicate for a felony-firearm conviction. MCL 750.227b.[2] Finally, testimony that defendant did not have a CPL was irrelevant to his self-

---

[1] The facts in this case are distinguishable from the facts in *Powell*. There, the defendant was charged with possession with the intent to deliver marijuana and felony-firearm, and convicted of felony-firearm. *Powell*, 303 Mich App at 272-274. The prosecution argued specifically that the defendant's possession of a handgun served as evidence he was involved in selling the marijuana. *Id*. at 278. This Court concluded that CPL evidence was relevant because it lent credibility to the defendant's argument that he legally possessed the handgun and was innocently present in the flat where marijuana had been found. *Id*.

[2] MCL 750.227b(1) states, "A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, 227, 227a, or 230, is guilty of a felony and shall be punished by imprisonment for 2 years. Upon a second

defense claim. The Legislature codified self-defense at MCL 780.972, which provides that an individual not engaged in the commission of a crime may use deadly force, with no duty to retreat, if that individual has an honest and reasonable belief that such force is necessary to prevent imminent death or great bodily harm. MCL 780.972(1)(a). See also *People v Conyer*, 281 Mich App 526, 529-530; 762 NW2d 198 (2008). Evidence that defendant lacked a CPL does not make it more or less probable that defendant had an honest and reasonable belief he needed to shoot Rosemond to prevent imminent death or great bodily harm.

Such evidence is also not admissible for any other purpose under the Michigan Rules of Evidence. It does not show "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material" under MRE 404(b)(1), and is not probative of defendant's truthfulness or untruthfulness under MRE 608(b).

Even though the testimony that defendant did not have a CPL was irrelevant, admission of such testimony did not amount to plain error affecting defendant's substantial rights. Given the evidence in support of defendant's convictions, including Rosemond's testimony, this information did not alter the outcome of the trial. Nor did admission of the CPL testimony result in the conviction of an actually innocent defendant, or affect the fairness, integrity, or public reputation of judicial proceedings. Although the jury may have considered this testimony when assessing defendant's credibility, defendant's credibility could be questioned on the basis of his other testimony, as well. For example, defendant testified that after he fired his gun, he saw the man he fired at run into a vacant field, but police officers found Rosemond in Fields's house sitting in a pool of blood. Defendant also testified that despite knowing Rosemond from employing him to fix cars, windy conditions and a hood in his face prevented him from recognizing Rosemond. Further, defendant said in his statement to police that the man who came up behind him said, "Give it up," but when asked at trial about his statement, defendant said he could not be sure the man actually said, "Give it up."

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Donald S. Owens

---

conviction under this subsection, the person shall be punished by imprisonment for 5 years. Upon a third or subsequent conviction under this subsection, the person shall be punished by imprisonment for 10 years."