*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WESLEY CHESTER BASTION,

        Defendant-Appellant.

UNPUBLISHED
April 29, 2021

No. 351728
Ottawa Circuit Court
LC No. 18-042539-FH

Before: BECKERING, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant, Wesley Chester Bastion, of resisting and obstructing in violation of MCL 750.81d(1), associated with his response when sheriff deputies sought to execute an arrest warrant. The trial court sentenced him to 60 days in jail. Defendant argues on appeal that the trial court erred by excluding evidence relevant to his defense and, in so doing, violated his constitutional right to a fair trial. We agree.

## I. RELEVANT FACTS

On December 14, 2016, defendant was arrested after marijuana plants were found in his home. He was charged with three counts of possession of marijuana with intent to deliver. According to the record before us, defendant had no prior criminal history. The case languished for 16 months and on April 4, 2018, the prosecution was granted dismissal by *nolle prosequi*. Through e-mail, defense counsel and the prosecution reached an agreement that if the prosecutor's office reinstated the charges, defendant would be advised and permitted to self-surrender. The prosecutor's e-mail states this unequivocally: "*As agreed, I will let you know when those [charges] are authorized and sworn too* [sic] *so that your client can turn himself in.*" (Emphasis added).

The record does not indicate when the charges were reinstated, but it is undisputed that the prosecution, contrary to its written agreement, did not notify defense counsel in order to arrange for defendant's self-surrender. Instead, on September 5, 2018—nearly three years after his initial arrest and more than five months after the *nolle prosequi*—a bench warrant was issued for defendant's arrest.

-1-

Ottawa County Sheriff's Deputy Gregory Walski testified that at around 8:30 p.m. on September 5, 2018, he was dispatched to pick up defendant on an arrest warrant[1]. After confirming that he had the right house, ensuring on his computer system that the arrest warrant was "confirmed and valid," and viewing a photo of defendant on his computer system, Walski parked his vehicle out of sight[2] and approached defendant's front door in full uniform. He saw defendant through the glass-front storm door, standing on an interior staircase near the small foyer landing. After verbally confirming defendant's identity, Walski instructed him to come outside. Defendant asked why, and Walski said that he wanted to talk to him. Defendant would not come out, so Walski explained why he was there, "Mr. Bastion, Wesley, you have a felony arrest warrant, you are under arrest and I need you to come outside." Almost simultaneously with this statement, defendant leaned over and flicked the door handle, which Walski surmised was him locking the door. Defendant proceeded to ask questions about the warrant while talking to his wife, Andrea Bastion, and calling his attorney. Walski repeatedly informed defendant that he was under arrest because of a warrant and instructed him to come outside.

Defendant testified that he and his family had just gotten back from hockey practice, finished dinner, and were getting the kids ready for bed when there was a knock at the door, on a weeknight, after dark. Defendant went to the door, where he saw Walski standing off the stoop. Defendant asked Walski what he was there for, and Walski informed him he was there to serve a warrant for defendant's arrest. Defendant asked if he could see the warrant, but Walski responded that he didn't have one. Defendant asked Walski what the warrant was for, and Walski responded that he didn't know. Defendant testified that he was pleasant and told Walski that he thought it was a mistake, so he wanted to get some information from his lawyer first. Walski agreed that defendant advised him that he had a lawyer and had concerns about an arrest warrant. He agreed that defendant remained within his sight at least 90% of the time and did not attempt to flee or threaten him. He also agreed that defendant, and also possibly Andrea, asked for a paper copy of the warrant, but Walski did not have one; his information was limited to what was on his patrol car's computer screen.

Andrea testified that she was suspicious because Walski did not know the reason for issuance of an arrest warrant. Because she believed there was some mistake, she called their attorney. Defendant's counsel admitted into evidence phone records to establish that Andrea had called their attorney.[3]

---

[1] The arrest warrant was admitted into evidence and produced to the jury. The parties stipulated that the charges underlying the arrest warrant should be stricken from the document as irrelevant. Defense counsel confirmed that he expressly agreed with this stipulation.

[2] Officer Walski testified that parking the patrol vehicle out of sight minimizes the risk that the subject of the arrest warrant will see the officer coming and shut the blinds and lock the house. The goal is to encourage the individual to engage with the officer at the doorstep and exit the house without resistance, making effectuation of an arrest warrant easier.

[3] Andrea testified that the phone records show she called their attorney at 8:31 p.m., but he did not answer his phone. At 8:41 p.m., their attorney called back. Andrea was on the phone with their

Walski testified that the felony arrest warrant authorized him to enter defendant's house without permission in order to apprehend defendant. But because defendant had locked the door, Walski proceeded to issue verbal instructions for defendant to come outside. Defendant continued to refuse, at which point Walski stated, "Look, Mr. Bastion, you realize that I'm doing my job, here to do my job," and defendant responded, "Yes." Walski stated, "And that, you're affecting – you're obstructing my ability to do my job by not coming outside right now," and again, defendant said "Yes." Defendant and Andrea proceeded to walk up and down the stairs near the foyer and confer, drawing their two children's attention as well. Walski notified dispatch of defendant's refusal to exit the home and called his supervisor. Walski's supervisor instructed him to call a couple of patrol cars for back up and enter the home to make the arrest.

Two Ottawa County Sheriff's officers proceeded toward defendant's home to serve as backup for Walski. Officer Maber Nasif was the first to arrive. He was in uniform. Walski estimated that Nasif arrived 10 minutes after Walski had arrived on the scene. Upon Nasif's arrival, Walski advised defendant, "Hey, we're going to – we're going to – we're going to break this door down. We're just waiting for Colson to show up."

Nasif testified that he stood three feet from the front door, where he observed Walski tell defendant and Andrea to come outside at least three times, explaining and trying to persuade defendant to comply with the warrant process. Nasif also asked defendant to come out of the home to "take care of the warrant," but defendant would not come out.

Defendant and Andrea both testified that they informed the deputies that defendant was not refusing or resisting arrest, they were just trying to "figure out what was going on" and to clear things up with their lawyer. Defendant claimed at trial that he initially was not certain Walski was an officer because he could not see him clearly in the dark. Andrea testified similarly. Defendant said his suspicions were aroused when Walski did not have a paper copy of the arrest warrant and could not answer basic questions, such as the date of the warrant and the nature of the charges against him. But defendant admitted, "Once Nasif arrived and we saw a marked car, we knew they were police officers for sure."

Andrea testified that she had defendant's attorney on the phone and asked Walski to speak with him. Walski testified that when Andrea opened the storm door to hand the deputy her cell phone, he yanked the door open and attempted to get past her to defendant. According to Walski and Nasif, Andrea used her body to physically obstruct their entry to the house, but the deputies were eventually able to get her outside. While this was happening, Walski observed defendant approach the wooden front door, "slam" it shut, and apparently lock it because Walski tried to open it but was unable to do so.[4] According to Walski, only seconds passed from the time defendant slammed the front door shut and when he opened it again, as Walski had turned to assist

---

attorney for nine minutes. The phone call ended after Andrea was pulled out of the home and her phone fell on the ground.

[4] Defendant admitted that he did shut the door. He at first stated that he did not remember if he had locked the door, then responded, "Probably, but only briefly."

Nasif, who was entangled with Andrea while trying to place her in handcuffs. According to defendant, he closed the door because the family's 55-pound dog became agitated over the deputies' treatment of Andrea, and defendant wanted to crate him.[5] Defendant testified that once he realized the situation was not going to be resolved peaceably, he opened the door and surrendered. Walski recalled the entire interaction—from the time he arrived on scene to the point defendant was in custody—lasting around 22 minutes.

Defendant pleaded guilty to the marijuana charge, but the prosecution charged him with resisting and obstructing on the basis of the conduct described above. Prior to defendant's trial for resisting and obstructing, the prosecution filed two motions[6] in limine seeking to preclude as irrelevant any evidence associated with the procedural steps leading up to the issuance of the warrant, including the agreement between defendant's attorney and the prosecutor reflected in the e-mail exchange quoted above, indicating that if the prosecutor refiled the marijuana charge, he would notify defense counsel and allow defendant to surrender himself. The prosecutor argued that the self-surrender agreement was irrelevant to the resisting and obstructing offense essentially because the elements of the offense do not require proof as to the reason why defendant chose to obstruct, he just has to knowingly obstruct a police officer in the performance of his duties. Defendant opposed the motion, claiming that the evidence went to his state of mind and whether he knowingly failed to obey a lawful command. The trial court granted the motions, prohibiting defendant from explaining or illustrating with evidence why he was attempting to consult with his lawyer and why he thought the warrant was a mistake.

## II. DISCUSSION

On appeal, defendant contends that the trial court's ruling prohibiting him from admitting evidence and testimony about the circumstances of his prior arrest on the marijuana charges, dismissal of that case, and the agreement between the prosecutor and defendant's attorney that defendant could self-surrender should the prosecutor decide to refile the charges, violated his constitutional right to a fair trial by depriving him of his defense that he did not obstruct the officers in violation of MCL 750.81(d) because he did not knowingly fail to obey a lawful command. We agree.

This Court reviews a trial court's evidentiary ruling for an abuse of discretion. *People v Holtzman*, 234 Mich App 166, 190; 593 NW2d 617 (1999). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "Few rights are more fundamental than that of an accused to present evidence in his . . . own defense." *People v Unger* (*On Remand*), 278 Mich App 210, 249; 749 NW2d 272 (2008). However, the right is not unlimited; a defense "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v King*, 297 Mich App

---

[5] Walski testified that he did not remember the presence of any dog at the incident.

[6] The prosecution filed a motion in limine, followed by a motion for clarification as to the extent of the trial court's order prohibiting evidence relating to the marijuana case and a self-surrender agreement between defendant's attorney and the prosecutor.

465, 473, 474; 824 NW2d 258 (2012). To the extent this issue implicates the right to present a defense, our review is de novo. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

Relevant evidence is generally admissible. See MRE 402. "Relevant evidence has two characteristics: it is material and has probative force." *People v Starr*, 457 Mich 490, 497; 577 NW2d 673 (1998) (quotation marks and citations omitted). To be material, evidence does not need to relate to an element of the charged crime or an applicable defense. *People v Brooks,* 453 Mich 511, 518; 557 NW2d 106 (1996). Rather, the "relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." *People v Yost*, 278 Mich App 341, 403; 749 NW2d 753 (2008) (citation and quotations omitted).

To establish the crime of resisting or obstructing a police officer under MCL 750.81d(1), the prosecutor must prove that: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties[,]" and (3) "that the officers' actions were lawful." *People v Quinn*, 305 Mich App 484, 491-492; 853 NW2d 383 (2014) (internal quotation marks and citations omitted). Notably, ML 750.81d(7)(a) defines "[o]bstruct" as "the use or threatened use of physical interference or force *or a knowing failure to comply with a lawful command*." (Emphasis added).

Defendant's proffered defense was that the officers were making a mistake in arresting him, and that he took time to figure out "what was going on" before he surrendered to the police. Thus, his defense was that he was not resisting the arrest, but was taking a brief amount of time to clarify whether the officers were making a mistake—to determine whether their arrest warrant was lawful. Defendant wished to offer evidence of the circumstances giving rise to his belief that the arrest was a mistake and of the need to therefore clarify the status of his arrest with his attorney. Thus, the evidence excluded by the trial court provided the context for defendant's actions and was directly related to defendant's proffered defense.

The fact that the prosecution made a promise in writing and then broke it by sending a police officer to defendant's home to arrest him without notifying defendant's counsel that charges had been reinstated or giving defendant the agreed-upon opportunity to surrender himself, while perhaps not directly relevant to the elements of resisting and obstructing, was highly relevant to defendant's conduct resulting in the charges. See *Yost*, 278 Mich App at 403. It was also probative to the extent that it speaks to whether defendant was knowingly resisting a lawful command. Thus, the evidence was relevant because it was material and probative, see *Brooks*, 453 Mich at 518, and the trial court abused its discretion by excluding it. In so doing, the court also violated defendant's right to a fair trial.

Defendant is entitled to a new trial, with admission of the evidence concerning the prosecution's agreement to permit self-surrender and to give notice when the charges were reinstated. To be clear, today's decision does not condone resisting lawful commands by a police officer executing a valid arrest warrant until one has a chance to confer with his or her lawyer and satisfy him- or herself that the warrant is indeed valid and the arrest lawful. Moreover, even after admission of the evidence at issue, a jury could still find defendant guilty of resisting and

obstructing.  However, fundamental fairness demands that the jury should be presented with the whole story before making that decision.

Vacated and remanded.  We do not retain jurisdiction.


/s/ Jane M. Beckering
/s/ Douglas B. Shapiro