*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNEDY AMMAN and CORI AMMAN,

UNPUBLISHED
December 21, 2023

Plaintiffs-Appellants,

v

No. 362353
Saginaw Circuit Court
LC No. 17-035098-CZ

BETHANY BUSCH,

Defendant-Appellee.

Before: GLEICHER, C.J., and SWARTZLE and YATES, JJ.

GLEICHER, C.J. (*dissenting*).

During a choir class at Chesaning High School, a piano fell off a dolly and onto plaintiff Kennedy Amman's foot, crushing it. The sole issue at trial was whether defendant Bethany Busch, the choir teacher who was moving the piano when it fell, knew of the piano's unsteadiness. The trial court derailed Kennedy's case by precluding her from presenting any evidence that a previous choir teacher, Yasmin Gewirtz, had publicly complained of the piano's instability. The majority affirms, holding that because Gewirtz disavowed having made the statements attributed to her and claimed she had never spoken to Busch about the piano, the trial court's exclusion of the evidence was not an abuse of discretion. I respectfully dissent.

## I. BACKGROUND

Kennedy and her mother, plaintiff Cori Amman, sued the Chesaning school district, the school principal, and Busch. The three defendants unsuccessfully sought summary disposition in the trial court. This Court reversed regarding the school district and the principal, holding that summary disposition in their favor was warranted. *Amman v Chesaning Union Schs*, unpublished per curiam opinion of the Court of Appeals, issued August 27, 2020 (Docket Nos. 346483 and 346484). But we upheld the denial of summary disposition as to Busch, holding that the evidence supported a gross negligence claim arising from Busch's decision to move the unstable piano with a group of students standing nearby. In large part, we rested our opinion on the fact that a former choir teacher, Gewirtz, had allegedly noticed the piano's unsteadiness and commented about it at the school.

At the summary disposition stage, we noted several students' affidavits quoting Gewirtz's comments about the piano, specifically its dangerousness. Alyssa Tinklepaugh averred that Gewirtz "had trouble moving the piano on the dolly," that she had students help her move the piano because the piano was too heavy to move herself, and that she had "complained to the whole class that the piano on the dolly was not level, or that it was unstable, and that she was going to go to the Administrative Offices and let them know about this." Two weeks before the accident, Tinklepaugh asserted, Busch had "made almost the exact same comment that [Gewirtz had] made, namely that the piano on the dolly was 'unstable,' and that she was going to 'inform the front office,' and similar such words."

Brionna Harrison, another student, affirmed in an affidavit that Gewirtz "had trouble moving the piano on the dolly on her own," that she had students help her move the piano on at least one occasion, and that she had "said things to the effect of, 'This piano is wobbly' and 'This is not sturdy' meaning the piano on the dolly." Harrison's affidavit continued that on at least one occasion, Gewirtz had "openly complained during class that the piano on the dolly was wobbly." Violet Foster, another classmate, affirmed that Gewirtz would call on students in class to help her move the piano on the dolly, that Gewirtz was unable to move it on her own, and that Foster heard Gewirtz "complain about the state the piano was in, and that she wished the School would get rid of it."

In our first opinion, we held that these affidavits, in combination with evidence that Busch herself had voiced concerns about the piano, provided evidentiary support for Kennedy's gross negligence claim. We highlighted that the statements were admissible because they were not offered to prove that the piano was wobbly (this fact was essentially admitted), but instead to prove that Busch knew or should have known of the piano's instability on the dolly.

Predictably, at the trial, proof of Busch's knowledge of the piano's unsteadiness was the key to Kennedy's case against Busch. Because she was a governmental employee, Busch's liability hinged on whether a jury determined that she was grossly negligent.

Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). This Court has described gross negligence as

> almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004)].

As we explained in our first opinion, if Busch had conversations with other teachers regarding the piano's danger, those conversations would be relevant to Kennedy's gross negligence claim. Busch's failure to take *any* precautions—despite being concerned that moving the piano on the dolly was "an accident waiting to happen"—could constitute "a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea*, 263 Mich App at 90. If Busch knew or should have known about the danger, her failure to put any safeguards in

place, including simply instructing students to stand on the opposite side of the room as the piano was moved, could support a gross negligence claim.

After our remand and before the case went to trial, Busch filed a motion in limine seeking to exclude Gewirtz as a witness in the case and to prohibit Kennedy and her witnesses from testifying to Gewirtz's statements. As the majority opinion recites, the trial court granted Busch's motion on relevancy grounds. The trial court reasoned that "the question of whether or not the prior music teacher said something is entirely irrelevant to whether or not the Defendant Busch was grossly negligent in relation to this particular case." The court continued: "Ms. Gerwitz [sic] is totally irrelevant. We've got enough issues, we don't need other issues or other nonissues being brought into this case." The trial court's order stated, in relevant part, that "Defendant's motion arguing that portions of [the students'] Affidavits that mention Ms. Gerwitz [sic] shall be stricken is GRANTED. Further, Ms. Gerwitz [sic] will not be mentioned in any part of the trial, and shall not be called as a witness to the trial, as she is not a party to the suit, and the School has been dismissed."

The majority affirms, observing that the students' affidavits "do not indicate that Gewirtz made the remarks to defendant or in defendant's presence, and the affidavits do not establish *any* connection between Gewirtz and defendant. Consequently, the affidavits did not show that defendant received notice of the piano issue from Gewirtz." No other evidence established a connection between Gewirtz and Busch, the majority adds, summarizing that "[t]he remarks of the prior choir teacher unconnected to defendant had no bearing on what defendant knew about the piano."

## II. ANALYSIS

In my view, Gewirtz's statements were relevant regarding whether Busch knew or should have known of danger presented by moving the piano on the dolly. In affirming the trial court's in limine ruling, the majority conflates the *relevance* of the excluded evidence with the *persuasiveness* (in the majority's estimation) of that evidence.

Relevant evidence is evidence "having any tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401 (emphasis added). To be relevant, evidence must tend " 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *People v Crawford*, 458 Mich 376, 389-90; 582 NW2d 785 (1998), quoting MRE 401. Our Supreme Court emphasized in *Crawford* that "[t]he threshold is minimal: 'any' tendency is sufficient probative force." *Id*. at 390. Evidence is relevant if it "in some degree advances the inquiry," 1 McCormick, Evidence (6th ed), § 185, p 736, and is not objectionable simply because it fails to supply conclusive proof.

Long ago, our Supreme Court recognized that "[n]o single item of evidence can be rejected upon the sole ground that it falls short of making a case; if it contributes to that end it must be received, and its sufficiency in connection with the other evidence must be determined on a review of the whole when the case is closed." *Collins v Beecher*, 45 Mich 436, 438; 8 NW 97 (1881). More recently, the Supreme Court amplified the same point in *People v Brooks*, 453 Mich 511,

519; 557 NW2d 106 (1996), by quoting extensively from the McCormick treatise, "where the reader encounters the familiar formulation that 'a brick is not a wall:' "

> Under our system, molded by the tradition of jury trial and predominantly oral proof, a party offers his evidence not en masse, but item by item. An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. It need not ever make that proposition appear more probable than not. Whether the entire body of one party's evidence is sufficient to go to the jury is one question. Whether a particular item of evidence is relevant to his case is quite another. It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common objection that the inference for which the fact is offered "does not necessarily follow" is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence ever could meet. A brick is not a wall. [*Id.*, quoting 1 McCormick, Evidence (4th ed), § 185, p 776.]

The statements attributed to Busch establish a fact of consequence to the action: that the piano was obviously unsteady and that any choir teacher who moved the piano knew or should have known of its dangerousness. The statements attributed to Gewirtz establish precisely the same relevant fact. Gewirtz's deposition denial that she had made the statements and her insistence that she did not recognize the piano's danger may have made the students' accounts less believable, but her testimony did not render them less relevant.

The majority concludes that because Busch could not have heard them, Gewirtz's statements were "unconnected" to Busch and "had no bearing on what [Busch] knew about the piano." But the statements' relevancy does not rise and fall on whether Busch heard them. Rather, evidence that another choir teacher knew that the piano was "an accident waiting to happen" would assist the jury in determining that Busch *should have known* that the piano was unsteady because its danger was obvious, and common knowledge within the school. Contrary to the majority, Busch's denial of any knowledge is not conclusive proof that she was unaware that others had expressed concerns about the piano's safety. Cross examination is all about challenging such steadfast denials and allowing a *jury* to assess their credibility.[1]

In my view, the trial court abused its discretion by preventing Kennedy from offering the strongest proof she had that Busch knew or should have known of the piano's unsteadiness when perched on a moving dolly. Gross negligence is difficult to establish, and Kennedy faced an uphill battle under the best of circumstances. The elimination of one strong brick of support for that proof made that task insurmountable. By detailing the reasons that Busch was unlikely to have been aware of Gewirtz's statements, the majority misplaces it focus, making the same error as the

---

[1] The majority observes that "allowing Gewirtz to testify at trial simply would have set up a credibility contest between Gewirtz and the students about what Gewirtz said several years before defendant Busch started teaching choir classes at Chesaning High School." This is precisely what a trial is all about.

trial court. The jury could have considered Gewirtz's views irrelevant because Busch didn't hear them, just as the majority and the trial court did. But constructing a list of reasons a factfinder might disregard a piece of evidence doesn't equate to irrelevance as a matter of law.

Whether Busch knew or should have known about the piano's danger was the only real issue at the trial. Gewirtz's statements were relevant to whether Busch should have seen what was obvious to Gewirtz and others. Indeed, Gewirtz's statements provided the strongest possible evidence of that fact. Because the improper exclusion of this evidence was "inconsistent with substantial justice," MCR 2.613(A), I would reverse and remand for a new trial.

/s/ Elizabeth L. Gleicher