*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER ADAM LAKE,

        Defendant-Appellant.

UNPUBLISHED
July 27, 2023

No. 360058
Ingham Circuit Court
LC No. 20-000557-FC

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of victim under 13 years of age by defendant 17 years of age or older). The trial court sentenced defendant to concurrent terms of 25 to 50 years' imprisonment for both counts of CSC-I. We affirm.

## I. BASIC FACTS AND PROCEDURAL BACKGROUND

This case arises from defendant's sexual assault of his daughter when she was between three and five years old. The victim testified that defendant showered with her while her mother was at work and, while they were in the shower, defendant told her to put his penis in her mouth.[1]

---

[1] The victim testified with a support dog and its handler near her. The trial court also locked the courtroom doors and seated defendant and the victim as far away as was reasonable from one another. Before trial, the prosecution had filed a motion for special arrangements pursuant to MCL 600.2163a and a notice of intent to use a courtroom support dog during the victim's testimony. At the motion hearing, defense counsel stipulated to the use of special courtroom arrangements and a support dog, stating, "I typically don't and will not today oppose those. Those are fairly standard motions in cases of this sort to which I agree." Defense counsel confirmed defendant's consent at the final pretrial conference. Shortly before the victim's testimony at trial, defense counsel confirmed defendant's consent again. The trial court instructed defendant to raise any issue that caused him "concern" during the victim's testimony. Defendant never did so.

-1-

Defendant gave the victim candy as a reward for doing so. The victim's mother testified that she noticed that the victim had become more motivated by "treats" at approximately the same time. The victim's mother stated on cross-examination that she was unaware of the sexual assaults because she believed that defendant had stopped showering with the victim when she was three years old, and the victim did not disclose anything to her or exhibit any unusual behavioral changes at that time. The victim's mother clarified on redirect examination that she was not concerned by the victim's lack of behavioral change. This was because, in her experience as a teacher, she had reported at least 20 sexual abuse incidences to Children's Protective Services (CPS) and there was not a "universal reaction or attitude" by children to the sexual abuse.

The victim's mother testified that she and defendant had separated when the victim was approximately five years old for unrelated reasons, and defendant had moved in with his sister, niece, and mother. The victim testified that while she was visiting defendant at her aunt's house, defendant took a bath with her in his bathing suit, and the victim asked him if he remembered what they used to do in the shower together. The victim's cousin testified that she overheard the victim ask defendant if he remembered when she used to suck his penis in the shower. The victim's cousin further testified that the victim disclosed the assaults to her the following morning when they were dancing together. The victim stated to her cousin, "My dad used to make me suck his tallywacker." The victim's cousin told the victim to report the assaults to their grandmother and the victim's aunt, which she did. The victim's aunt testified that she immediately took the victim back to her mother's house, where the victim disclosed the sexual assaults to her mother. The victim's mother testified that she reported the sexual abuse to CPS. The victim was interviewed by a forensic interviewer at Children's Advocacy Center (CAC) while the detective investigating the case observed from another room. Both the detective and the forensic interviewer testified concerning the general process and purpose of a forensic interview before testifying about their respective roles in the victim's interview. The detective and the interviewer testified that the victim disclosed the sexual abuse to the forensic interviewer, and the victim's disclosures were consistent with what she had disclosed to her cousin, grandmother, aunt, and mother.

The victim's mother testified that defendant had sent her messages in which he admitted that he had showered with the victim and offered her treats to keep it a secret. The victim's aunt testified that defendant admitted in messages to her that he had showered with the victim, that the victim was "curious" about his genitalia, that he had offered her treats to keep her from telling anybody, and that he knew that "he probably should have stopped" showering with her sooner. Defendant was later interviewed by the police, and defendant admitted that he had regularly taken showers with the victim and that he intended to stop showering with her because she had expressed "curiosity" about his "tallywacker," which is a word that defendant regularly used to describe his penis. In a subsequent interview, defendant admitted that there were multiple occasions on which the victim had put his penis in her mouth while they showered together, and he provided the officer with a drawing to show approximately how far he believed that his penis had entered the victim's mouth on those occasions. A video recording of defendant's second interview was presented to the jury.

After the trial and sentencing, defendant moved for a new trial and an evidentiary hearing, arguing that he was denied his due-process right to a fair trial because the use of special courtroom arrangements and a support dog during the victim's testimony was prejudicial; that several witnesses provided irrelevant and improper opinion testimony, and their testimony vouched for

the witness; that the prosecution intentionally elicited testimony from several witnesses to vouch for the victim's credibility; and that defense counsel was ineffective for failing to object to the special courtroom arrangements or support dog, failing to object to improper, irrelevant, and vouching testimony, and failing to call an expert witness in memory to challenge the accuracy of the victim's memory. The trial court issued a written opinion and order denying defendant's motion for failing to show that a new trial or evidentiary hearing was warranted. This appeal followed.

## II. WITNESS TESTIMONY

Defendant raises multiple claims of testimonial error, which are not preserved because he failed to object to the admission of any of the testimony at issue on appeal. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2019) (quotation marks and citation omitted). The defendant bears the burden of persuasion and, to obtain appellate relief, must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

## A. IMPROPER OPINION TESTIMONY

Defendant first argues that the victim's mother, the detective, and the forensic interviewer were erroneously permitted to testify as expert witnesses and provide improper opinion testimony, despite not being formally qualified as experts pursuant to MRE 702. We disagree.

Lay witness testimony is governed by MRE 701, which states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Expert witness testimony is governed by MRE 702, which states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Defendant argues that the testimony of the victim's mother that children do not exhibit a "universal reaction or attitude" to sexual abuse was improper opinion testimony because she was not qualified as an expert witness. However, the testimony was not based on scientific, technical, or specialized knowledge. See MRE 702. The victim's mother was not testifying about children's reactions to sexual abuse generally but about her personal experience with children who had disclosed sexual abuse to her in her role as a teacher. Specifically, the victim's mother stated that in *her* "exposure to children who have made reports of abuse," she had not noticed a "universal reaction or attitude" in response to the sexual abuse. Her opinion was based on her own perception of the children that she had previously interacted with, therefore bringing it within MRE 701.

Defendant also argues that the detective's testimony regarding the procedure and purpose of a forensic interview was improper opinion testimony because he was never formally qualified as an expert. This argument also is without merit. After describing the general forensic interview process, the detective stated that detectives watch the forensic interview from another room to avoid having to interview the child an additional time because the interview process can be "a traumatic event to go through." An officer may testify concerning his or her opinion based on his or her experience, observations, and training so long as the testimony is rationally based on his or her perceptions during an investigation, and the officer's testimony in this case about his "understanding of trauma . . . acquired through training and experience" is not "technical or scientific" testimony. *People v Allen*, 331 Mich App 587, 609; 953 NW2d 460 (2020), vacated in part on other grounds 507 Mich 856 (2021). The detective's testimony was based on his nearly 32 years of service on the police force and experience investigating at least one thousand child sexual assault cases in his career. A fair reading of the record indicates that the detective was explaining opinions and conclusions based on his personal perception of forensic interviews, including the victim's interview. See *id*. at 609-610.

Defendant's argument that the forensic interviewer's testimony regarding the forensic interview process was improper opinion testimony equally is without merit. Nothing in the record suggests that the interviewer was offering a technical or scientific analysis of the evidence to "assist the trier of fact" in understanding the evidence by testifying regarding the forensic interview process. See MRE 702. The interviewer conducted the victim's interview, and she employed all of the interview procedures that she ordinarily employs when she conducts a forensic interview. For the jury to understand the victim's forensic interview, the interviewer necessarily had to testify concerning the steps she ordinarily took when she conducted a forensic interview of a child on a day-to-day basis. Because the interviewer's testimony was rationally based on her perceptions and helpful to the jury for a clear understanding of her testimony about the victim's interview, her testimony fell squarely within the realm of MRE 701, and the trial court did not err by admitting it.

## B. RELEVANCE

Defendant next argues that the trial court erroneously admitted testimony from the victim's mother, the detective, the forensic interviewer, and the first interviewing officer because it was irrelevant to the case. We disagree.

Generally speaking, relevant evidence is admissible and irrelevant evidence is inadmissible at trial. See MRE 402. "Relevance involves two elements, materiality and probative value."

*People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011) (quotation marks and citations omitted). Materiality refers to a fact that is at issue at trial, but it "does not mean that the evidence must be directed at an element of a crime or an applicable defense." *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000) (quotation marks and citation omitted). Evidence has probative force if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; see also *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996). Evidence related to the credibility of a witness is always relevant. *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020).

Defendant has not shown that the trial court erred by admitting the testimony of the victim's mother about her experience with children who reported sexual abuse to her. Defendant's theory throughout trial was that the victim fabricated the sexual assault allegations or inaccurately remembered the circumstances surrounding the assaults given her age, and defense counsel repeatedly pointed to the victim's lack of emotional or behavioral change following the assaults to support these theories. The testimony of the victim's mother about her experiences with sexually abused children put into context her testimony regarding the victim's behavior following the sexual assaults. Specifically, it clarified why she was not alerted to the sexual assaults and why she was not particularly surprised or concerned that the victim did not exhibit any behavioral changes, despite being sexually assaulted by defendant. Such testimony directly related to the believability of the victim's allegations against defendant, and evidence related to the credibility of a witness is always relevant. See *id*. Because the testimony of the victim's mother was related to an issue at trial and tended to make it more probable that the victim was truthful when she reported the assaults, the testimony was relevant. See *Sabin*, 463 Mich at 57; *Brooks*, 453 Mich at 518.

Defendant also has not shown that the trial court erred by admitting either the detective's or the forensic interviewer's testimony. Both witnesses testified concerning their involvement in the victim's interview and their opinions on the victim's allegations following that interview. Whether the victim's interview followed standard procedure was material to and probative of whether the victim's allegations were believable, which was central to defendant's theory of the case. See *Sabin*, 463 Mich at 57; *Brooks*, 453 Mich at 518. Further, the detective's reference to the interview as a "traumatic event" was proper opinion testimony, as discussed above, and it was relevant to understand why he did not personally interview the victim after she had completed her forensic interview. Both the detective's and the interviewer's testimony was relevant to the reliability and believability of the victim's allegations, which was directly at issue at trial. The testimony assisted the jury in determining the victim's credibility, and evidence related to the credibility of a witness is always relevant. See *Spaulding*, 332 Mich App at 660.

Lastly, defendant has failed to show that the trial court erred by admitting the testimony of the first interviewing officer. The officer testified that two weeks before interviewing defendant about the victim's allegations, he responded to a "domestic call" at defendant's home. The officer's testimony was relevant to explain why the officer had already known defendant before interviewing him about the victim's allegations. Additionally, contrary to defendant's arguments, the probative value of this testimony was not substantially outweighed by the danger of unfair

prejudice under MRE 403.[2]  The officer immediately clarified that no assault had occurred, that the term "domestic call" is simply how the dispatchers categorize it so that the officers know what they are responding to, and that he did not discuss the victim's allegations with defendant when he responded to the call.  Defendant takes particular issue with the officer's testimony that defendant was "drunk" and upset during the domestic call.  However, defendant "opened the door" to such testimony by asking the officer on cross-examination to describe defendant's demeanor when he responded to the domestic call.  See *People v Uribe*, 508 Mich 898, 912 (2021) (VIVIANO, J., *dissenting*).  Accordingly, we conclude that the trial court did not err by admitting the testimony.

## C.  VOUCHING

Lastly, defendant argues that the testimony of the victim's mother, the detective, and the forensic interviewer vouched for the victim's credibility.[3]  Again, we disagree.

"[I]t is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial."  *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013).  Witness credibility is "to be determined by the jury," not witnesses.  *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).  For instance, a witness may not testify that a minor victim of sexual abuse was not coached to make the allegations or that the victim "was being truthful" when reporting the sexual abuse.  See *People v Douglas*, 496 Mich 557, 570, 583; 852 NW2d 587 (2014) (quotation marks and citations omitted).

Defendant argues that the testimony of the victim's mother, the victim's aunt, the detective, and the forensic interviewer vouched for the victim's credibility.  This argument is without merit.  First, the victim's mother did not testify that the victim was not coached or that the victim was being truthful when she disclosed the assaults to her.  See *id*.  Rather, she testified that defendant had never accused her of coaching the victim, and she never specifically testified about the victim's truthfulness.  Her testimony about how other children had emotionally responded when they disclosed sexual abuse to her was neither a comment nor an opinion on the victim's credibility.  See *Musser*, 494 Mich at 349.  Next, the victim's aunt did not testify that the victim was being truthful when she disclosed the assaults, but that she *believed* that the victim was telling the truth, which explained why she "acted immediately" and took the victim back to her mother's home.  The testimony is better understood as explaining the conduct of the victim's aunt, rather than improper vouching.  Moreover, the detective and the interviewer merely testified about the purpose and procedure of a forensic interview, and testimony regarding the forensic interviewing protocol

---

[2] Defendant makes no MRE 403 argument in relation to the testimony of the victim's mother, the detective, or the forensic interviewer.

[3] We note that defendant also argues that the testimony of the victim's aunt was inadmissible hearsay.  However, defendant has failed to provide any factual or legal support for this claim in his brief.  See *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000) ("A party may not merely state a position and then leave it to this Court to discover and rationalize the basis for the claim.").  Accordingly, defendant has abandoned the issue, and we decline to address it.  See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) (noting that failure to properly brief the merits of an issue on appeal constitutes abandonment of the issue).

does not constitute improper vouching testimony. See *People v Sardy*, 313 Mich App 679, 723; 884 NW2d 808 (2015), vacated in part on other grounds 500 Mich 887 (2016). Further, the detective's testimony that there was no evidence that the victim was coached was permissible because an officer does not vouch for another witness's credibility when he testifies that "there was no indication that the victim had been coached." See *id*. at 721-723. Defendant points to nothing in the record that suggests that the aforementioned testimony improperly vouched for the victim's credibility, and we conclude that defendant has failed to show that any error occurred. See *Carines*, 460 Mich at 763; *Brown*, 326 Mich App at 195.

## D. PREJUDICE

For the reasons previously explained, defendant did not show any error, much less plain error, with respect to his testimonial issues. However, even if defendant did show plain error with respect to these issues, we alternatively conclude that he failed to show prejudice.

It is undisputed that defendant told an officer during the second interview that his penis entered the victim's mouth on two occasions. Moreover, defendant provided an illustration to the officer to indicate how deeply his penis did so. Thus, defendant essentially admitted to the necessary acts for CSC-I, see MCL 750.520b(1)(a), and did not dispute that admission at trial. While defense counsel attempted to minimize the importance of this admission during closing argument by asserting that the victim was unilaterally responsible for the sexual penetration due to her "curiosity," the plausibility of that assertion was greatly undermined by the fact that defendant offered the victim treats to remain quiet about their showers together, the fact that the victim consistently told relatives and testified at trial that defendant was responsible for the sexual penetration, and the fact that defendant acknowledged continuing to shower with the victim despite her purported curiosity about his penis. Given these facts, it defies belief that defendant's penis entered the victim's mouth without his knowledge or consent during their mutual showers. Accordingly, defendant fails to show prejudice.

## III. PROSECUTORIAL ERROR

Defendant argues that he was denied a fair trial because the prosecution committed error by intentionally eliciting witness testimony for the sole purpose of vouching for the witness's credibility. We disagree.

Because defendant did not object to the prosecutor's remarks at trial, we review this unpreserved claim for plain error affecting substantial rights. *People v Bennett*, 290 Mich App 465, 475-476; 802 NW2d 627 (2010). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Claims of prosecutorial misconduct are reviewed "on a case-by-case basis by examining the record and evaluating the remarks in context." *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010) (cleaned up). Prosecutors are "accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted). However, the prosecution "may not vouch for the credibility of his or her witnesses" because there is a "danger is that the jury will be persuaded by the implication that the prosecutor has knowledge that the jury does not and decide the case on this basis rather than on the evidence presented." *Bennett*, 290 Mich App at 477-478.

While defendant claims that the prosecution intentionally elicited testimony from the victim's mother, the victim's aunt, the detective, and the forensic interviewer to bolster the victim's credibility "in subtle but prejudicial ways," nothing suggests that the prosecution did so. As discussed above, defendant has not shown that any of the testimony was improper, irrelevant, or vouched for the victim's credibility. For a vouching issue in the context of prosecutorial misconduct, we "focus on whether the prosecutor elicited the testimony in good faith." *Dobek*, 274 Mich App at 71. Nothing suggests that the prosecution did not act in good faith. The record makes clear that the prosecution was well aware of possible vouching issues, and the prosecution seemingly went out of its way to note on the record that a juror's question for the detective was not asked because both parties agreed it took them "into the area of vouching for the credibility of a witness" and therefore "could not be raised in front of the jury." The prosecution never asked any of the witnesses to comment on the victim's credibility, and there is nothing in the record to suggest that the prosecution intentionally elicited any testimony for the "sole purpose" of vouching for the victim's credibility. Accordingly, we cannot conclude that the prosecution proceeded with questioning and elicited testimony in anything but good faith. See *id*. In any event, as previously explained, defendant fails to show prejudice with regard to this testimony.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his due-process rights were violated when the trial court permitted the seven-year-old victim to testify with various special courtroom arrangements in place and a support dog and its handler near her, and defense counsel was ineffective for failing to object. Defendant also asserts that defense counsel was ineffective for failing to object to testimony from the victim's mother, the victim's aunt, the detective, the forensic interviewer, and the first interviewing officer as either irrelevant, an improper opinion, or vouching. Defendant further asserts that defense counsel was ineffective for failing to call an expert in memory at trial to challenge the accuracy of the victim's memory. We disagree.

## A. PRINCIPLES REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL

Whether counsel was ineffective presents a mixed question of fact and law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). Because no *Ginther*[4] hearing was held in the trial court, our review is limited to errors apparent from the record. *People v Acumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Shaw*, 315 Mich App at 672. A defendant "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not

---

[4] *People v Ginther*, 390 Mich 436, 445; 212 NW2d 922 (1973).

to have been the result of reasonable professional judgment." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This Court then evaluates "whether the trial attorney's acts or omissions were outside the wide range of professionally competent assistance." *People v Green*, 322 Mich App 676, 684; 913 NW2d 385 (2018), overruled in part on other grounds by *People v Peeler*, 509 Mich 381; 984 NW2d 80 (2022) (quotation marks and citation omitted). We presume counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539.

B. THE USE OF SPECIAL COURTROOM ARRANGEMENTS AND A SUPPORT ANIMAL

We first note that defendant waived his claim of due-process error by affirmatively approving the trial court's decision to allow the victim to testify with particular seating arrangements, the courtroom doors locked, and a support dog and its handler accompanying her in conjunction with the trial court's jury instruction that the jury was to disregard the presence of the support animal. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011); see also *People v Johnson*, 315 Mich App 163, 173-174; 889 NW2d 513 (2016).[5] Furthermore, defendant's claim of ineffective assistance of counsel is without merit.

A trial court's decision to use special courtroom accommodations or a support animal is governed by MCL 600.2163a, which provides, in relevant part:

> (4) The court must permit a witness who is called upon to testify to have a support person sit with, accompany, or be in close proximity to the witness during his or her testimony. The court must also permit a witness who is called upon to testify to have a courtroom support dog and handler sit with, or be in close proximity to, the witness during his or her testimony.

> \* \* \*

> (18) If upon the motion of a party made before trial the court finds on the record that the special arrangements specified in subsection (19) are necessary to protect the welfare of the witness, the court must order those special arrangements. In determining whether it is necessary to protect the welfare of the witness, the court must consider all of the following factors:

> (a) The age of the witness.

> (b) The nature of the offense or offenses.

> (c) The desire of the witness or the witness's family or guardian to have the testimony taken in a room closed to the public.

---

[5] For the same reason, defendant also waived his claim that MCL 600.2163a violates the separation of powers and his claim that the trial court failed to make appropriate findings before invoking the statute.

(d) The physical condition of the witness.

(19) If the court determines on the record that it is necessary to protect the welfare of the witness and grants the motion made under subsection (18), the court must order 1 or more of the following:

(a) That all persons not necessary to the proceeding be excluded during the witness's testimony from the courtroom where the trial is held. The witness's testimony must be broadcast by closed-circuit television to the public in another location out of sight of the witness.

(b) That the courtroom be arranged so that the defendant is seated as far from the witness stand as is reasonable and not directly in front of the witness stand in order to protect the witness from directly viewing the defendant. The defendant's position must be the same for all witnesses and must be located so as to allow the defendant to hear and see all witnesses and be able to communicate with his or her attorney.

(c) That a questioner's stand or podium be used for all questioning of all witnesses by all parties and must be located in front of the witness stand.

A support animal is not "inherently prejudicial," and the trial court has "inherent authority to control its courtroom and the proceedings before it to allow a witness to testify while accompanied by a support animal." *Johnson*, 315 Mich App at 178. "[T]he use of a support animal allows the trial court to ease the situation for a traumatized or fearful young witness while at the same time allowing the jury and the defendant to view the witness while testifying." *Id.*

In this case, the victim qualified as a witness for the purposes of MCL 600.2163a because she was seven years old at the time of the trial, and she alleged that defendant had sexually assaulted her. See MCL 600.2163a(1)(g)(*i*) and (2)(a). Because of this, the prosecution filed a pretrial motion to close the courtroom doors, seat defendant further away from the victim while she testified, and use a podium in front of the witness stand, and it filed its notice of intent to use a support dog and its handler during the victim's testimony as it was required to do. See MCL 600.2163a(5). Defendant explicitly consented to all of the courtroom arrangements and the support dog and, based on the parties' stipulation, the trial court necessarily found that such courtroom arrangements were necessary to protect the victim's welfare while she testified. See MCL 600.2163a(18). In utilizing special courtroom arrangements and the support dog, the trial court adhered to all of the statutory requirements. See MCL 600.2163a(4), (5), (18), and (19).

Moreover, the record does not suggest that defendant was actually prejudiced by the trial court's use of the special arrangements or support dog. See *Johnson*, 315 Mich App at 181-182; see also *People v Rose*, 289 Mich App 499, 509, 517; 808 NW2d 301 (2010). The record reflects that defendant was able to adequately see and hear the victim when she testified in the new seating arrangement, that the podium was properly situated in front of the witness stand, and that defendant's trial was broadcast to the public in another room during the victim's testimony as required. See MCL 600.2163a(19). Furthermore, nothing suggests that the victim ever interacted with the dog or its handler during her testimony, or that the dog barked, growled, or otherwise

made its presence known or interrupted the proceedings in any way. Therefore, any objection to the special courtroom arrangements or support dog on the grounds that they violated his due-process right to a fair trial would have been meritless, see *Johnson*, 315 Mich App at 181-182, and defense counsel cannot be deemed constitutionally ineffective for failing to raise a futile or meritless objection, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## C. FAILURE TO OBJECT

Defendant argues that defense counsel was ineffective for failing to object to the witness testimony previously discussed and the prosecution's line of questioning. We disagree. As discussed above, defendant has failed to establish that any of the testimony was improper, irrelevant, prejudicial, or vouched for the victim's testimony. At most, defendant argues that defense counsel's choice not to object caused him prejudice. However, because the trial court did not err by admitting the testimony and the prosecution's line of questioning was proper, any objection would have been futile, and defense counsel is not ineffective for failing to make a meritless objection. See *Ericksen*, 288 Mich App at 201. Moreover, the decision to object is a matter of trial strategy, *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008), and defendant has provided this Court with no basis upon which to conclude that failure to object was not a reasonable trial strategy.

## D. FAILURE TO CALL AN EXPERT WITNESS

Defendant also argues that defense counsel was ineffective by failing to call an expert in memory at his trial. We disagree. Counsel's decision to retain expert witnesses is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The record clearly reflects that defense counsel extensively cross-examined the victim on what she could and could not remember in an effort to undermine the accuracy of the victim's memory of the assaults. Defense counsel also focused a significant portion of his closing argument on the victim's constant recitation of "the same story" to various adults and her apparent inability to remember "basic" facts. Defense counsel even stated in his closing argument, "I didn't ask further questions because it was clear that [the victim] just did not recall." It is abundantly clear that defense counsel's strategy at trial was to undermine the reliability and credibility of the victim's memory of the assaults through cross-examination. While defendant believes that presenting an expert on memory would have been helpful in his defense, that defense counsel's particular trial strategy failed does not mean his performance was deficient. See *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016). Accordingly, defense counsel's decision to cross-examine the victim, rather than call an expert in memory, did not fall below an objective standard of reasonableness.

Alternatively, even if defendant did show that defense counsel performed deficiently in one or more respects, he fails to show prejudice. As previously explained, defendant admitted to an officer that his penis entered the victim's mouth on two occasions, and the circumstances of the case are completely inconsistent with the notion that defendant did not have knowledge of or consent to this activity, or that it was otherwise accidental from his perspective. Thus, there is no reasonable probability that, but for trial counsel's error(s), the result of the proceedings would have been different. See *Shaw*, 315 Mich App at 672.

## V.  CONCLUSION

There were no errors warranting relief.  Accordingly, we affirm.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates