*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　Plaintiff-Appellee,

v

TROY ANTONIO BROWN,

　　　　Defendant-Appellant.

UNPUBLISHED
December 21, 2023

No. 365451
Macomb Circuit Court
LC No. 2015-002617-FC

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals by right his jury conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13 years old), for which he was sentenced to serve a prison term of 300 to 720 months (25 to 60 years). We affirm.

## I. BACKGROUND

Defendant's conviction was the result of a report by the complainant that defendant had sexually penetrated her in April 2015, when she was 12 years old and in defendant's care. The complainant's guardian, her brother, dropped her off at her usual babysitter's home when he went to work for the evening. The babysitter allowed her children and the complainant to visit defendant's nearby home to play with his children. While the other children were in a playroom, and defendant and the complainant were alone, he directed her to his bedroom. He brandished a belt and instructed her to disrobe. The complainant testified that she initially refused, but eventually complied out of fear. The complainant continued that defendant instructed her to lie on the floor, then spread her legs and penetrated her digitally, then, after forcing her legs open again and placing a pillow over her face, penetrated her with his penis. Afterwards, the complainant felt "nasty" so she washed herself with soap and then later took a shower at the babysitter's home. The guardian testified that the complainant was upset when he picked her up from the babysitter the following morning, and that she telephoned asking to be picked up from school later that day. When the guardian picked her up, the complainant tearfully disclosed that defendant had raped her. The complainant was taken to the police station and then to a hospital where she underwent

-1-

medical and forensic examinations. Eventually, as stated above, defendant was charged and convicted of CSC-I.

On appeal, defendant argues that (1) he was denied a fair trial by the admission of DNA evidence which did not implicate him; (2) sentencing variables were incorrectly scored; and (3) his trial counsel provided ineffective assistance by not objecting to the removal of the only African-American member of the jury pool, and by not negotiating a favorable plea deal. We disagree.

## II. SCIENTIFIC EVIDENCE

This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *People v Martzke*, 251 Mich App 282, 286; 651 NW2d 490 (2002). However, unpreserved claims of evidentiary error are reviewed for plain error affecting substantial rights. *People v Coy*, 243 Mich App 283, 287; 620 NW2d 888 (2000). Reversal is then warranted only if plain error resulted in the conviction of an innocent defendant, or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

An unpreserved claim of prosecutorial error is also reviewed for plain error affecting substantial rights. *Id*. at 761-762. Comporting with this standard is this Court's pronouncement in *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008), that "[r]eview of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or failure to review the issue would result in a miscarriage of justice." (Quotation marks and citation omitted.).

Defendant challenges the admission of testimony from six forensic scientists with the State Police regarding the DNA evidence in this case. Billie Hooker testified that a vaginal swab from the complainant excluded defendant as a DNA donor, and that swabs from each of the complainant's hands contained DNA from an unidentifiable minor donor. Andrea Young testified that the samples from the complainant's hands had DNA from three males but that the test results were otherwise inconclusive. Dr. Hafner testified that four samples from the complainant did not contain male DNA, and three had insufficient levels of male DNA to determine a match.

Melinda Jackson testified that she examined swabs of defendant's genitals and found no seminal fluid on the penis swab. Jennifer Dillon testified that swabs from defendant's penis and hands each contained a mixture of DNA from defendant plus an individual whose sample was insufficient to make any comparison. Kirk Deleeuw's testing excluded the complainant as a contributor to any sample. Thus, no expert testified that forensic evidence linked defendant to the crime.

The prosecutor also asked the experts about the limits of their findings. Hooker testified that it was possible for a person to have sexual relations with another and not leave any DNA, that the quality of a DNA sample erodes over time, and that washing would degrade a DNA sample. Jackson, Young, Dillon, and Deleeuw each testified that washing might interfere with what could be collected. Dr. Hafner testified that fluid was detected in samples taken from the complainant, but that there were multiple possible origins for it.

## A. RELEVANCE

Defendant argues that evidence of negative and inconclusive results was irrelevant because it is not probative of anything when unaccompanied by "statistical evidence or probability assessment bearing on whether [defendant] was in physical contact with the complainant."

"Generally, all relevant evidence is admissible at trial." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). See also MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition," evidence that is useful in shedding light on any material point is admissible. *Aldrich*, 246 Mich App at 114. To be material, evidence need not necessarily relate to an element of the charged crime or an applicable defense. *People v Brooks*, 453 Mich 511, 517-518; 557 NW2d 106 (1996) (citation omitted). Rather, the "relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." *People v Yost*, 278 Mich App 341, 403; 749 NW2d 753 (2008) (quotation marks and citation omitted).

In this case, the relevance of the DNA evidence at trial was to show that sexual assaults do not always leave DNA samples identifying the perpetrator, to show that some of the samples at issue did not exclude defendant as a contributor, and also to inform the jury that the case had been thoroughly investigated. As it turns out, the DNA evidence did not implicate defendant in the assault, thus its relevance was especially important to defendant's denial of his involvement in the crime. With the admission of DNA evidence that did not incriminate defendant, he was free to argue, and did argue, that his claim of innocence was supported by this evidence. Thus, the evidence was relevant to both the prosecution and the defense.

Defendant argues that the prosecutor's questions regarding the scientific evidence insinuated that the evidence was incriminating even though, for various reasons, no DNA link between defendant and the complainant was detected. However, the evidence did not prejudice defendant, but actually benefited him, because it did not identify him as involved in the crime. Although the prosecutor testified about the limits of DNA testing, these limitations were not presented as if preventing defendant's identification in particular, and the experts were subject to defendant's cross-examination to clarify that the results did not implicate him at all.

## B. PROSECUTORIAL ERROR

The prosecutor has a duty to ensure that the defendant receives a fair trial. *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). The responsibility of a prosecutor is to seek justice, rather than merely to convict. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[T]he test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id.*[1] A fair trial "can be jeopardized when the prosecutor interjects issues broader than the

---

[1] The phrase "prosecutorial misconduct" is a term of art routinely used to describe any error committed by the prosecution, even though claims of merely technical or inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the

guilt or innocence of the accused." *Id*. at 63-64. However, "[a] finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence." *People v Abraham*, 256 Mich App 265, 278; 662 NW2d 836 (2003).

Defendant argues that it was prosecutorial error to elicit from the experts that the lack of a DNA match had explanations other than defendant's innocence. Defendant states that there were "insinuations by the prosecutor in her questioning, in the case of each expert who testified, that there was incriminating DNA evidence but for various reasons it was not detected, or it had been washed away." The right to a fair trial requires that a guilty verdict be based on the evidence and "not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *People v Banks*, 249 Mich App 247, 256; 642 NW2d 351 (2002) (quotation marks and citation omitted).

In this case, the prosecutor's questioning of the experts about the DNA results did not unfairly suggest that the evidence actually incriminated defendant. Instead, the questioning concerned the readily apparent limitations of DNA testing, and highlighted some of the reasons that DNA may not be present in a sample. Moreover, the defense emphasized that defendant's DNA was not present in any sample as indicating that defendant did not have contact with the areas from which the samples were taken. That the prosecutor offered one explanation for the lack of defendant's DNA in the samples did not imply that the DNA evidence actually incriminated defendant. The questioning was not unfair because it did not contaminate the evidence on which the jury decided the case. The jury was able to consider the lack of DNA evidence incriminating defendant, along with defendant's argument in this regard, and make a determination about those results. For these reasons, defendant has not established prosecutorial error.

## III.  SENTENCING VARIABLES

A sentencing court must consult the advisory sentencing guidelines and assess the highest amount of possible points for all offense variables. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). The sentencing offense determines which offense variables are to be assessed, and the appropriate offense variables are generally assessed by reference to the sentencing offense. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008).

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate advisory guidelines range. *Id*. at 89 n 7.

This Court reviews the trial court's factual determinations at sentencing for clear error. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to

_____

most extreme cases constituting 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017).

"A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017). The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), overruled in part on other grounds by *People v White*, 501 Mich 160, 164 n 2; 905 NW2d 228 (2017).

## A. OFFENSE VARIABLE 10

Defendant argues that the trial court erred in assessing offense variable (OV) 10, which covers exploitation of a victim's vulnerability, at 15 points, which MCL 777.40(1)(a) prescribes when predatory conduct was involved. "Predatory conduct" is defined as "pre-offense conduct directed at a victim for the primary purpose of victimization." MCL 777.40(3)(a).

In *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008), the Supreme Court stated that OV 10 is properly scored at 15 points when the responses to the following inquiries are affirmative:

(1) Did the offender engage in conduct before the commission of the offense?

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

Predatory conduct involves only conduct that is "commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011), quoting *Cannon*, 481 Mich at 162. Predatory conduct is conduct that "created or enhanced" a victim's vulnerability, including actions to gain a victim's trust and exploiting the trust to facilitate a sexual assault. *People v Barnes*, 332 Mich App 494, 503-504; 957 NW2d 62 (2020) (citation omitted).

In this case, defendant argues that his conduct was run-of-the-mill planning to commit the crime. The trial court assessed 15 points after agreeing with the prosecutor that defendant's predatory conduct included isolating a young victim and assaulting her after threatening her with a belt. The evidence supported the trial court's determination.

The evidence indicated that defendant exploited the complainant's youth and dependency through coercive behavior by an older authority figure in order to isolate and abuse her. The 11-year-old complainant was visiting defendant's home with other children while she was in the care of a babysitter, and it is a reasonable inference that she was dependent on defendant in that situation for guidance and safety, and was readily susceptible to his persuasion and assertions of authority. Defendant's preoffense conduct included closing the blinds and locking all children except the complainant in a playroom before he directed her into the bedroom and to disrobe while intimidating her by holding his belt in his hand. Though this period of preoffense conduct was brief, the evidence suggested that defendant's use of isolation and intimidation against the young person entrusted to him exploited her trust and enhanced her vulnerability to create the opportunity to sexually assault her. See *Barnes*, 332 Mich App at 503-504. Waiting for an opportunity to be alone with a victim in an isolated location is sufficient to constitute predatory conduct. *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434 (2003).

## B. OFFENSE VARIABLE 13

OV 13, which considers a continuing pattern of criminal behavior, was assessed at 25 points, which MCL 777.43(1)(c) prescribes when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." The crimes considered in assessing OV 13 include "all crimes within a 5-year period, including the sentencing offense, . . . *regardless of whether the offense resulted in a conviction*." MCL 777.43(2)(a) (emphasis added).

Defendant argues that OV 13 should have been assessed at zero points because he had committed no crimes in the five years preceding his May 5, 2022 conviction. However, because the scoring of OV 13 was not challenged at sentencing, the trial court did not provide a rationale for its determination.

In determining the points for OV 13, "only those crimes committed during a five-year period that encompasses the sentencing offense can be considered." *Francisco*, 474 Mich at 86. Defendant's argument that the five years should be counted from the date of his conviction, instead of from the date of the offense, is thus inapt.

A court may consider uncharged offenses, so long as once the information is challenged, the facts are substantiated by the preponderance of the evidence. *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007). In this case, defendant's sentencing offense occurred on April 27, 2015, and consisted of an act of penile-vaginal penetration. Additionally, there was an uncharged act involving digital vaginal penetration that defendant does not dispute, which constitutes another crime against the complainant on the night in question. Moreover, the record indicates that defendant committed a second-degree home invasion on October 31, 2012, and was sentenced for this on April 5, 2013. Second-degree home invasion is a crime against a person, MCL 777.16f, and this instance took place within five years of the sentencing offense. Thus, defendant's three crimes against a person in the five years before his sentencing offense satisfied the conditions for assessing OV 13 at 25 points.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right to counsel encompasses the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness[.]" *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.* Unpreserved claims of ineffective assistance of counsel are limited to review for errors apparent on the record. *Unger*, 278 Mich App at 253.

### A. SENTENCING

Defendant argues that his trial attorney provided ineffective assistance by failing to object to the assessment of OV 13 at 25 points at sentencing. However, failing to raise a futile objection does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### B. JURY SELECTION

Defendant argues that defense counsel should have objected to the prosecutor's peremptory challenge of one of the potential jurors, on the ground that the challenge was improperly motivated by the challenged juror's race. At sentencing, defendant's counsel stated that he did not challenge the prosecutor's peremptory challenge of "an African-American male." The prosecutor retorted that he sought dismissal of the juror because "he was very difficult and . . . so hostile that he wasn't able to follow logic or reason."

The Sixth Amendment of United States Constitution guarantees a criminally accused a fair trial by a panel of impartial jurors. *People v DeLeon*, 317 Mich App 714, 722; 895 NW2d 577 (2016). See also Const 1963, art 1, § 14. An important function of voir dire is to allow the court and the parties to discover bias that would render a potential juror incompetent. *People v Jendrzejewski*, 455 Mich 495, 509-510; 566 NW2d 530 (1997).

An African-American defendant is denied the equal protection guaranteed under the Fourteenth Amendment of the United States Constitution when the state "puts him on trial before a jury from which members of his race have been purposefully excluded." *Batson v Kentucky*, 476 US 79, 85; 106 S Ct 1712; 90 L Ed 2d 69 (1986). In this case, defendant asserts without elaboration that "the prosecutor eliminated apparently the only black juror on the panel." However, there is no evidence that any juror was purposefully excluded on the basis of race. Further, there is no record of the racial composition of the jury, and no identification of the juror in question.

In *People v Jackson*, 313 Mich App 409, 430; 884 NW2d 297 (2015), this Court, quoting *People v Vaughn*, 200 Mich App 32, 40; 504 NW2d 2 (1993), stated that, " 'unless it is clear from the record that the prosecution is using its peremptory challenges in a discriminatory fashion, a defendant who fails to raise the issue or otherwise develop an adequate record of objections forfeits appellate review of the issue.' " As in *Jackson*, in this case, the record does not indicate that the juror in question was challenged because of his race. Thus, defendant has not provided an adequate factual predicate in support of his claim. See *Jackson*, 313 Mich App at 431. Further, defendant does not offer even speculation regarding how any deficient performance of his trial counsel relating to the exclusion of the potential juror in question prejudiced him.

For these reasons defendant has not met his burden to demonstrate that defense counsel's performance was deficient in this regard.

## C. PLEA NEGOTIATION

A defendant's right to the effective assistance of counsel includes the plea-bargaining process. *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), citing *Lafler v Cooper*, 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012). "Defense counsel must explain to the defendant the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice." *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). In the context of a plea offer, mistaken advice from trial counsel regarding the sentence a defendant might receive at trial may constitute deficient performance. *Douglas*, 496 Mich at 593.

In this case, before jury selection, the prosecuting attorney informed the trial court that he had "been in discussions about possible resolutions" with defendant's trial counsel, and offered lifetime registration on the sex offenders registry, lifetime electronic monitoring, credit for time served, and five years of probation, in exchange for a guilty plea, thus avoiding a 25-year mandatory minimum sentence if convicted on the basis of compelling evidence, including an incriminating telephone call from jail. Defendant personally directed defense counsel to "proceed to trial," and affirmed to the trial court that he wished to reject the offer.

At sentencing, defense counsel remarked about the plea offer that, although defendant continued to maintain his innocence after trial, defendant "feels" that she "didn't clearly advocate for that—to him." The prosecuting attorney responded that he had "made a significant record about the offer, and the difference between the offer and the risks of trial."

Although there was a striking difference between the lengthy prison sentence defendant must serve, and the less imposing terms of the plea offer, the record does not suggest that defendant's denial of the deal was influenced by mistaken advice. The parties' discussion on the record revealed that defendant was fully informed of the terms of the offer, and how it contrasted with the risks of trial. Defendant emphatically and bluntly rejected the offer, even before he learned that the term of probation actually offered was longer than had been initially reported. Defense counsel's expression that she could have "advocated" more for the plea deal was not an admission of mistaken advice, particularly in light of defendant having staunchly maintained his innocence even after being found guilty. Defendant has not established that his trial counsel did not accurately explain to him his range of choices and consequences. For these reasons, the record

does not support defendant's claim of deficient performance by defense counsel in plea negotiations.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola